**Shumway Van & Hansen**
MICHAEL C. VAN, ESQ.
Nevada Bar No. 3876
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770
Facsimile: (702) 478-7779
Email: michael@shumwayvan.com
   Attorney for The Gun Vault, Inc. and Kelly D. Carn

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GEORGE DEMETRIUS KARALIS, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> THE GUN VAULT, INC., and KELLY D. CARN, <br><br> Defendants. | Case No.:   2:12-CV-000694-APG-GWF <br><br> **REPLY IN SUPPORT OF MOTION FOR STAY OF CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS** |

Defendants, THE GUN VAULT, INC. and KELLY D. CARN ("Defendants"), by and through their attorneys of record, the law firm SHUMWAY VAN & HANSEN, hereby files Defendants' Reply in Support of Motion for Stay of Civil Action Pending Resolution of Criminal Proceedings.

This Reply is based upon the below Memorandum of Points and Authorities, the pleadings and papers on file in this action, and any permitted oral argument.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **INTRODUCTION**

Plaintiff, George Demetrius Karalis' Opposition to Defendants' Motion to Stay Civil Proceedings fails to demonstrate through legal or factual means why a stay is not warranted pending the resolution of criminal proceedings. Even prior to the filing of Plaintiff, George Demetirus Karalis, M.D.'s ("Dr. Karalis") Compliant, Defendant Kelly D. Carn ("Mr. Carn") has been subjected to the pressures and stress of being the subject of several criminal prosecutions relating to the dealings of his business and co-defendant in the present action, The Gun Vault,

Inc. Notably, the claims asserted in Plaintiff's Complaint are essentially repeated verbatim in the criminal complaint filed in *State of Nevada v. Kelly Carn*, C-12-284671-1 (Eighth Judicial District Court for the State of Nevada) (herein after the "Criminal Complaint") Essentially, both Plaintiff's Complaint and the Criminal Complaint allege that Mr. Carn obtained payment from Dr. Karalis for eight firearms and thereafter failed to deliver said firearms to Dr. Karalis or provide a refund therefore upon demand.[1]

As the Court is aware, the Defendants throughout the pendency of this action have endeavored to marshal evidence necessary and critical to their defense which is believed to be in the possession of law enforcement, including a number of hard drives which were confiscated following a burglary at a private storage facility where numerous hard drives and back up documentation was stored. On July 7, 2014, this Court ordered that LVMPD provide to Defendants their original computer hard drives and flash drives seized from the 24/7 Private Storage Vaults, or alternatively, produce identical images thereof. (*See Dkt*. #89). This was further extended to August 15, 2014 as LVMPD could not produce the records in time. (*See Dkt*. #92). To date, LVMPD has produced one (1) single hard drive; however, the hard drive produced by LVMPD was not complete. Upon examination, the hard drive imaged by LVMPD and delivered to Defendants contained nothing but hummingbird videos. No doubt, the hummingbird videos do belong to Mr. Carn, but it became evident that the hard drive provided by LVMPD did not contained a full image of <u>all</u> of the hard drives belonging to Defendants in LVMPD's possession. There are numerous hard drives that were confiscated that contained family photographs or pictures of crafts, which were not present on the hard drive produced by LVMPD, allowing Defendants to know that not all of the hard drives were copied and imaged to Defendants.

Moreover, the government is now refusing to allow LVMPD Det. Noe Larios who was subpoenaed by Defendants to testify at deposition in relation to his expected testimony in this matter. (Defendant's note that Det. Larios was listed as a witness by the Plaintiff, but even so is

---

[1] *Cf.* Plaintiff's Complaint [Doc. #1] generally, with the Criminal Complaint, counts 9-16, a true and correct copy of which is attached hereto as **Exhibit A**.

believed to have possessed potentially exculpatory evidence for the Defendants). In response to a Subpoena issued by this Court calling for Det. Larios to appear for a deposition on May 26, 2015, the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) responded that it considered Det. Larios to be an "assigned Task Force Officer" for ATF in relation to his role and knowledge of this matter. As such, the Department of Justice requires the Det. Larios deposition to be authorized by the United States Attorney. While our office has contacted the United States Attorney for authorization to hold the deposition, there has been no response and no allowance of a deposition. Thus, even with aid of an Order from this Court, Defendant's efforts to marshal potentially exculpatory evidence have been stonewalled by the government.

Put simply, Defendants are facing parallel civil and criminal proceedings which are based upon the same nucleus of facts. Such necessarily forces Defendant Carn to choose between presenting a civil defense in a manner which preserves his Fifth Amendment rights but exposes himself and his company to civil liability, or courting liability in the criminal action by abandoning his Fifth Amendment rights in furtherance of the Gun Vault's defense in the civil action. Moreover, Mr. Carn's predicament is further compounded by the fact that as part of the government's investigation into the alleged criminal acts, volumes of potentially critical evidence and information has been withheld from Mr. Carn during the pendency of the criminal investigations. As such, the Court should stay the civil proceedings pending the resolution of the parallel criminal proceedings. Such would serve to protect Mr. Carn's constitutional rights as well as allow The Gun Vault, Inc., to present the most complete and full defense to the allegations presented in Plaintiff's Complaint.

## II.   ARGUMENT

This Court has the power to stay a civil proceeding "when the interests of justice seem to require such action."[2] A stay in this matter would not "derail" the civil proceeding, but would simply put a hold on the case until the criminal matters are resolved. Such a hold would be in the interest of justice in this matter. When faced with parallel criminal proceedings, the analysis

---

[2] *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995),

should be undertaken "in light of the particular circumstances and competing interests involved in the case" and after consideration of the "extent to which the defendant's Fifth Amendment rights are implicated."[3] Additional factors to be considered, *i.e.*, the "*Keating*" factors, include: 1) the interest of the Plaintiff in proceeding and the potential prejudice of delay; 2) the burden which the proceeding may place on Defendants; 3) the convenience of the Court in the management of its cases, and in the efficient use of judicial resources; 4) the interest of third parties to the civil action; and 5) the interest of the public in the pending civil and criminal litigation.[4] Each of these factors favors issuance of a stay.

### A. THE IMPLICATION OF MR. CARN'S FIFTH AMENDMENT RIGHTS WARRANTS A STAY.

"The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment is required to defend a civil or administrative action involving the same matter."[5] Even a cursory comparison of the civil and Criminal Complaint reveals that the same behavior is alleged in both pleadings. Thus, the perfect overlap of facts alleged in the civil and criminal cases cannot reasonably be disputed.

In Jones, the court stayed civil proceedings pending the resolution of a criminal matter after finding that if discovery moved forward, the defendant would have been faced with the "difficult choice between asserting his right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the [criminal] case."[6] The court further pointed out in that case that the civil and criminal case arose from the same alleged conduct of the defendant, and that the veracity of his statements in one case was directly related to his involvement in the other.[7] The court stayed the civil proceedings pending the resolution of

---

[3] *Id.*
[4] *Id.* At 324-25.
[5] *Jones v Conte*, 2005 WL 1287017, *1 (N.D. Cal. Apr. 19, 2005) (J. Illston) (internal quotation omitted); *see also, Continental Ins. Co. v. Cota*, 2008 WL4298372, *2 (N.D. Cal. Sept. 19, 2008) (stating that the extent to which Fifth Amendment rights are implicated by a civil proceeding is the *first consideration* when evaluating a stay request).
[6] *Id.* at *1 (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003).
[7] *Id.* At *2.

the criminal matter.[8]

Given the identical facts alleged in the Criminal Complaint and the Civil Complaint, "[i]t is difficult to imagine how the adjudication of [this civil case] would not implicate many of the factual issues underlying the criminal action."[9] While Defendants cannot know exactly what Plaintiff would ask them at trial, that is not determinative of whether Mr. Carn's may be prejudiced in this civil case, or forced to court criminal liability for his testimony. It is highly likely that given that both cases arise from the same nucleus of facts, the civil proceedings would directly relate to the issues in the criminal proceedings. Defendants do not dispute that criminal and civil matters may follow different procedures, but this does not preclude them from dealing with the same nucleus of facts.

Mr. Carn should not be forced to choose between abandoning the opportunity to defend against this civil action, and "courting liability in the criminal case" by waiving his Fifth Amendment rights. Mr. Carn's Fifth Amendment rights are directly implicated by the issues in this case, and no remedy exists that will allow him to both preserve these rights and defend this action, save a stay of the civil proceedings.

### B.     THE REMAINDER OF THE *KEATING* FACTORS FAVOR A STAY

#### 1.    <u>Any Prejudice to Mr. Karalis is Outweighed by Defendants' Fifth Amendment Concerns</u>

In Plaintiff's Opposition to Stay Civil Proceedings, Dr. Karalis fails to allege any actual prejudice against him, beyond delay of resolution, if the civil proceeding is stayed. The perceived prejudice that Dr. Karalis states is speculative and without merit. Dr. Karalis states that he has been prejudiced by "having to ride this three-plus year civil Rollercoaster." That time is simply the nature of a civil proceeding and this matter has gone forward in a procedurally proper manner. Moreover, it should be noted that prior to the instant motion, Plaintiff has stipulated to no less than eight (8) extensions to the initial scheduling order [Doc. 37, 40, 59, 63, 65, 74, 86

---

[8] *Id.*; *see also, McCormack,* 2010 WL 934242, at *2 (N.D. Cal.) (J. Fogel) (granting stay of civil proceedings pending resolution of related criminal case where "factual issues in the two cases are essentially the same"); *Cota,* 2008 WL 4298372, at *2 (N.D. Cal.) (J. Conti) (granting stay of civil action when "[i]t is undisputed that all of the civil actions and the criminal action spring from the same nucleus of facts.").
[9] *Id.* At *2.

and 93].

Dr. Karalis correctly states that a criminal acquittal does not absolve defendants of civil liability. However, Dr. Karalis' allegations that Mr. Carn would leave the jurisdiction, squander his assets, or leave Dr. Karalis with a "phantom defendant" are merely speculative and do not demonstrate any actual prejudice. Dr. Karalis also notes that criminal matters may settle with a plea bargain, thus indicating the potential for an expedited resolution. This would further reduce any prejudice to Dr. Karalis caused by staying the civil proceedings until the criminal matters are resolved.

A stay of civil proceedings nearly always has the potential of working *some* prejudice to the plaintiff. Any such prejudice in the case, however, is outweighed by "the burden on [Defendants] of presenting [their] civil defense in a manner that protects [their] Fifth Amendment rights."[10] Moreover any concern that these proceedings might be indefinitely delayed should be allayed by the fact that formal criminal proceedings have been initiated and are moving to trial. Indeed, trial on Case # C-12-284671-1 is set for October 5, 2015. Thus, the prejudice to Plaintiff in the event the civil proceeding is stayed would be slight.

The criminal matters will involve virtually identical evidence and witnesses as the civil matter. As the Court is aware, the danger that testimony will be lost is greatly diminished where two proceedings are likely to have the same people providing much of the same testimony. Moreover, as Plaintiff is aware, much of the discoverable evidence in this case (indeed nearly every responsive document to Plaintiff's discovery requests) resides on Defendants' computer equipment which was seized by the government during searches conducted during the investigation of the criminal matters. Additionally, ESI stored at a secondary location was also seized by law enforcement on April 14, 2012, in connection with an unrelated burglary at a private vault company. Despite Defendants' efforts and court intervention ordering the production of the information stored thereon, law enforcement has thus far produced the contents of one (1) hard drive (out of approximately 20 listed in search inventories), which consisted

---

[10] *McCormack*, 2010 WL 934242, at *3.

entirely of video footage of hummingbirds. As a result, evidence in this matter is preserved from loss or destruction. Moreover, volumes of relevant evidence believed to be crucial to the defense of this action, (not to mention the criminal matters) have been are now and will likely continue to be in the possession of law enforcement until the resolution of the criminal matters.

Finally, Defendants have not been found criminally or civilly liable for any of the conduct alleged in Plaintiff's Complaint or in the Criminal Complaints; Mr. Carn enjoys the presumption of innocence. Moreover, Plaintiff offers only speculative allegations and no evidence to suggest that funds are being secreted away in an effort to defeat some future judgment. Plaintiff's argument, if accepted, would permit Plaintiff to leverage the government's criminal indictment to secure a virtually unopposed and undeserved judgment against Defendants in the civil matter.[11] Defendants' interest in presenting a full and complete defense to the allegations asserted in Plaintiff's Complaint while also preserving Mr. Carn's Fifth Amendment rights must take priority over Plaintiff's attempt to secure an ill-gotten windfall judgment.

### 2. Proceeding With This Action Severely Burdens Mr. Carn

In Plaintiff's Opposition to Stay the Civil Proceedings, Dr. Karalis fails to demonstrate how continuing with the civil proceeding would not severely burden Mr. Carn. Dr. Karalis' claim that Mr. Carn would not be burdened are speculative. As described above, proceeding with this case will force Mr. Carn to choose between defending himself in this action and preserving his Fifth Amendment rights. Furthermore, Mr. Carn may be unable to raise a complete defense as he currently does not have access to all necessary information, evidence, and testimony. The extreme prejudice that will result from forcing this choice upon Mr. Carn outweighs any purported prejudice to Dr. Karalis from a delay in this matter.

### 3. The Convenience of the Court Weighs in Favor of a Stay

The Court has an interest in managing its cases efficiently. The extent to which common issues will be resolved in the criminal matters is not speculative, as criminal charges which

---

[11] *See Taylor, Bean & Whitaker Mort. Corp. v. Triduanium Fin'l*, 2009 WL 2136986, *4 (E.D. Cal. July 15, 2009) (granting a stay despite plaintiff's argument that it will be more difficult to recover monetary losses after the stay is lifted).

mirror the allegations of Plaintiff's Complaint are pending and are speeding toward trial. Thus, this factor weighs in favor of a stay.[12]

Plaintiff provides no basis for his claim that Defendants are estopped from arguing about wasted Judicial Assets or Judicial Economy. Defendants have proceeded in a procedurally proper manner throughout this case. The allegations made against the Defendants in this section are speculative and without merit.

### 4. No Interests of Persons Not Parties to The Action Will be Affected by a Stay

The interests of persons not parties to this action will not be affected by a stay. Although the criminal complaints name other alleged victims, said alleged victims have not asserted any civil claims against Defendants. Plaintiff fails to demonstrate that any actual interests by persons not parties to this case will be affected by this stay. Thus, there appears to be no other person(s) who may be affected by this action that is not already a party.

### 5. The Interest of The Public Favors a Stay

The public has an interest in "ensuring that the criminal process is not subverted by ongoing civil cases."[13] Moreover, "the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant."[14] The issues alleged in Plaintiff's opposition to the stay are speculative and are ultimately resolved by the existence of the criminal case. The public has a greater interest in the criminal process than in a private civil action.

Absent a stay, this case will proceed to trial parallel to the criminal cases, leaving Defendants with no reasonable opportunity to offer a defense. This scenario does not further the public's interest in a justice system that provides a viable means of securing the fair resolution of civil and criminal matters. Conversely, a stay would promote the public interest by providing Defendants with a meaningful opportunity exercise their constitutional rights *and* present a full and complete defense to the allegations presented in Plaintiff's Complaint.

---

[12] *See Jones*, 2005 WL 1287017, at *2 ("Staying the case makes efficient use of judicial resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination.") (internal citations omitted).
[13] *Douglas v. United States*, 2006 WL 2038375 (N.D. Cal. July 17, 2006).
[14] *Jones*, 2005 WL 1287017, at *2 (quoting *Javier H.*, 218 F.R.D. at 75).

### C. A STAY OF THIS ACTION PENDING THE CONCLUSION OF THE CRIMINAL PROCEEDINGS IS REQUIRED AS TO THE GUN VAULT, INC. AS WELL

Mr. Carn is the founder, President and sole shareholder of The Gun Vault, Inc., and is the only person through whom this entity can present a meaningful defense to the allegations presented in Plaintiff's Complaint. It will be exceedingly difficult for the Gun Vault to present a full and complete defense without the active participation, involvement and testimony of the primary individual with first-hand knowledge of the facts in dispute. Mr. Carn will be unable to provide that assistance while the criminal matters are pending – at least not without waiving his Fifth Amendment rights.

In *Triduanium Fin'l*, the court stayed the civil proceedings against both individual and entity defendants.[15] While acknowledging that the business entity had no Fifth Amendment right against self-incrimination, the court nonetheless held that:

> the Fifth Amendment rights of every director or officer who may speak on behalf of Triduanium are implicated, and thus, Triduanium is likely to be greatly prejudiced in its ability to meaningfully defend itself in the civil matter.[16]

Similarly, in *American Express Bus. Fin. Corp. v. RW Prof'l Leasing Service Corp.*, 255 F. Supp. 2d 263 (E.D.N.Y. 2003), the district court granted a stay of proceedings as to the two individual defendants to allow them to preserve their Fifth Amendment rights.[17] The court also stayed civil discovery as to the entity defendant, reasoning that the entity defendant would be unable to effectively conduct discovery and mount a defense without the availability of the individual defendants, each of whom were executive offices of the defendant corporation.[18]

The Gun Vault, Inc., will be unable to mount a meaningful defense without the assistance of Mr. Carn. Mr. Carn is an integral part of this proceeding and of The Gun Vault, Inc.'s defense. Accordingly, a stay of this action is warranted as to the Gun Vault, Inc., as well.

Given that the factors weigh in favor of a stay, Defendants respectfully request a stay

---

[15] *Triduanium Fin'l*, 2009 WL 2136986, *4.
[16] *Id.* At *3.
[17] *American Express*, 225 F. Supp. 2d 263, 265.
[18] *Id.* At 265-266; *see also Bruner Corp. v. Balogh*, 819 F. Supp. 811 (E.D. Wis. 1993) (finding that "it is not likely" that defendant "could proceed to trial without meaningful discovery from the individual defendant alleged to be part of the RICO enterprise.") *rev'd in part on other grounds*. 133 F. 3d 491 (7th Cir. 1998).

pending the resolution of the criminal case.

### D. DEFENDANTS HAVE NOT WAIVED FIFTH AMENDMENT PRIVILEGES IN THIS MATTER

Defendant, Mr. Carn has not waived his Fifth Amendment privileges in this matter. Plaintiff cites pleadings made in the criminal cases with the same nucleus of facts of this civil case to allege that Mr. Carn has waived his Fifth Amendment privileges. However, the case relied upon by Plaintiff, *Rogers v. U.S.*, (1951) 340 U.S. 367, the defendant waived her Fifth Amendment privilege against self-incrimination only in that case, and only after testifying about a specific topic in that case.

Furthermore, the issue involved in the Motion to Stay is to stay civil proceedings until the resolution of criminal proceedings, not to prevent the testimony of the Defendants absolutely in this matter.

### E. PLANTIFF'S STATEMENT THAT THE LOST COMPUTER FILES MAY BE A SCAM IS WITHOUT MERIT

Plaintiff's statement that the unavailable computer files may "be a scam to wear down the prosecution and the plaintiff by delays and delays" is without merit and lacks any basis in evidence. Furthermore, the argument is not applicable to the current motion.

### F. PLAINTIFF'S STATEMENT THAT THE FIFTH AMENDMENT WILL NOT PROTECT PERJURY IS NOT RELEVANT IN THIS MATTER

Plaintiff's statement that the Fifth Amendment will not protect perjury has no bearing on this motion. Defendants have not committed perjury and have not lost the opportunity to invoke Fifth Amendment privileges.

…

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this action be stayed as to all Defendants pending the conclusion of the criminal proceedings against Mr. Carn.

Dated this 8th day of June, 2015.

          SHUMWAY VAN & HANSEN

By: /s/ Michael C. Van
    MICHAEL C. VAN, ESQ.
    Nevada Bar No. 3876
    8985 South Eastern Avenue, Suite 100
    Las Vegas, Nevada 89123
    Attorney for The Gun Vault, Inc. and
    Kelly D. Carn

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **REPLY IN SUPPORT OF MOTION FOR STAY OF CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS** was submitted electronically for filing and/or service with the United States District Court, District of Nevada on the 8th day of June, 2015. I further certify that I served a copy of this document by mailing a true and correct copy thereof, postage prepaid, addressed to:

George D. Karalis, M.D.
235 Camino Del Mar
San Francisco, CA 94121
Facsimile: (415) 387-6118
Plaintiff in Proper Person

/s/ Rachel Henson
An employee of Shumway Van & Hansen